UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ROGER A. LAINEZ,                          :

              Plaintiff,        :        17 Civ. 2278 (HBP)

  -against-                              :        OPINION
                              AND ORDER
JUAN P. OSUNA, ET AL.,                    :

              Defendants.     :

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/8/18

        PITMAN, United States Magistrate Judge:

## I.  Introduction

        By notice of motion dated July 18, 2017 (Docket Item
("D.I.") 18), defendants move to dismiss plaintiff's complaint
pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject-matter
jurisdiction.  All parties have consented to my exercising
plenary jurisdiction in this matter pursuant to 28 U.S.C. §
636(c).  For all the reasons set forth below, defendants' motion
is granted.

## II.  Facts

### A.  Background

        Roger A. Lainez ("plaintiff") is a citizen of El
Salvador.  He immigrated to the United States in 1979 at the age

of eight with his mother as a lawful permanent resident (Plaintiff's Complaint, dated Mar. 29, 2017 (D.I. 1) ("Compl.") ¶ 5; Transcript of Removal Proceedings before the Honorable Roger Sagerman Immigration Judge, dated Aug. 1, 2017 (D.I. 29-1) ("Removal Trans.") at 97). Plaintiff's mother became a naturalized citizen in 1985 prior to plaintiff's eighteenth birthday (Removal Trans. at 98). Plaintiff has not had any contact with his father in several years; his father did, however, sign his birth certificate admitting paternity and is a lawful permanent resident of the United States (Removal Trans. at 98). Plaintiff's parents were never married (Removal Trans. at 99).

Plaintiff was convicted of multiple aggravated felonies since arriving in the United States. On January 21, 1998, plaintiff was convicted of attempted robbery in the first degree, in violation of New York Penal Law Sections 100 and 160.15 (Notice to Appear, dated Jun. 24, 2009, annexed to Compl. (D.I. 1) ("NTA") at 3). Thereafter, he was convicted on April 24, 2009 of two counts of robbery in the first degree and two counts of burglary in the first degree, in violation of New York Penal Law Sections 160.15(3), 160.15(4), 140.30(3) and 140.30(4) (NTA at 3). Plaintiff is currently serving an aggregate 12-year jail sentence for the 2009 convictions (Removal Trans. at 14).

B.  Plaintiff's
    Removal Hearing

On June 24, 2009, United States Immigration and Customs
Enforcement ("ICE") commenced removal proceedings against
plaintiff by serving him with the NTA.  The NTA charged that
plaintiff was removable from the United States on the basis of
his prior criminal convictions pursuant to Section
237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"),
8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an
aggravated felony at any time after admission is deportable.").
Plaintiff appeared before The Honorable Roger Sagerman,
Immigration Judge, nine times between December 10, 2009 and May
9, 2012.  During several of those appearances, plaintiff asserted
a citizenship defense, arguing that he was entitled to derivative
citizenship because his mother was naturalized prior to his
eighteenth birthday (Removal Trans. at 25, 31, 39).  Plaintiff
also applied for deferral of removal pursuant to Article III of
the United Nations Convention Against Torture ("CAT") (Removal
Trans. at 39).

In support of his claim of citizenship, plaintiff
relied on Section 321 of the INA, 8 U.S.C. § 1432(a), repealed by

Child Citizenship Act of 2000, INA § 320, 8 U.S.C. § 1431(a),[1] which permits an alien child born out of wedlock to obtain derivative citizenship from naturalized parents where, prior to his eighteenth birthday, (1) the child resided in the United States pursuant to a lawful admission for permanent residence, (2) the child's mother was naturalized and (3) the child was never legitimized by his father. If an out of wedlock child's father had legitimized him, both parents were required to be naturalized prior to the child's eighteenth birthday in order for the child to obtain derivative citizenship. See INA § 321. As Judge Sagerman pointed out in plaintiff's removal proceedings, plaintiff was not entitled to derivative citizenship under INA § 321 because his father had legitimized him by signing his birth certificate and his father was never naturalized (Removal Trans. at 25).

On May 12, 2009, Judge Sagerman issued an oral decision finding that plaintiff was not entitled to derivative citizenship

---

[1]INA § 321, 8 U.S.C. § 1432(a) was repealed by the Child Citizenship Act of 2000, INA § 320, 8 U.S.C. § 1431(a). Section 320 of the INA now governs the requirements for derivative citizenship for alien out of wedlock children. However, the new statute does not apply to aliens who reached their eighteenth birthday prior to February 27, 2001 and thus, INA § 321 applies in plaintiff's case because he was over eighteen years of age in 2001 (Decision on Roger A. Lainez's N-600 Application, dated Sept. 14, 2013 (D.I. 19-1) ("N-600 Dec.") at 1).

under INA § 321, and rejecting plaintiff's CAT claim, noting that plaintiff had failed to "establish it is more likely than not that he would be tortured . . . if removed from the United States" (Removal Trans. at 99, 105). Judge Sagerman issued an order of removal and advised plaintiff of his appellate rights (Removal Trans. at 107). Judge Sagerman also provided plaintiff with a written copy of the removal order and necessary forms to take an appeal (Removal Trans. at 106, 107). There is nothing in the record indicating that plaintiff ever filed an appeal with the Board of Immigration Appeals ("BIA"), and plaintiff's order of removal became final on June 8, 2012.

C.  Plaintiff's
N-600 Application

When plaintiff raised his derivative citizenship defense during removal proceedings, the Department of Homeland Security ("DHS") provided plaintiff with an N-600 application for citizenship on August 3, 2011 (Removal Trans. at 46). Judge Sagerman provided a second application to plaintiff on February 15, 2012 (Removal Trans. at 57, 58). The plaintiff submitted his N-600 application to United States Citizenship and Immigration Services ("USCIS") on March 12, 2012, but it was rejected ten days later because plaintiff had failed to pay the necessary fee

(Rejection Notice of N-600, dated Mar. 22, 2012, annexed to
Compl. (D.I. 1) ("Rej. Notice") at 1).  Plaintiff submitted
another N-600 application on May 2, 2012 with the appropriate fee
waiver application (Receipt Notice of N-600, dated May 14, 2012,
annexed to Compl. (D.I. 1)).

USCIS denied plaintiff's N-600 application on September
14, 2013 for the same reasons given by Judge Sagerman:  plaintiff
was not eligible to receive derivative citizenship under INA §
321 because his father had legitimized him, but was never himself
naturalized (N-600 Decision at 1-2).  The decision denying
plaintiff's N-600 application informed plaintiff he could appeal
USCIS's ruling directly to the Administrative Appeals Office
("AAO") within thirty days (N-600 Decision at 2).  Nothing in the
record indicates plaintiff ever filed an appeal with the AAO.

D.  Plaintiff's
Current Action

Plaintiff commenced this action pro se on March 29,
2017 (Compl.).  Construing the complaint broadly, plaintiff seeks
(1) a declaratory judgment that he is a United States citizen;
(2) an injunction to stay Judge Sagerman's May 9, 2012 removal
order; (3) a declaration that Judge Sagerman's and USCIS's
rejection of plaintiff's derivative citizenship claim was arbi-

trary and capricious under the Administrative Procedure Act ("APA") and (4) a writ of mandamus compelling USCIS to adjudicate plaintiff's N-600 application (Compl.).

Defendants seek dismissal of plaintiff's complaint for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Plaintiff submitted a one-page response to defendants' motion, repeating his request for a declaration of his citizen-ship, but failing to respond to any of defendants' jurisdictional arguments (Rebuttal to Respondent's Memorandum, dated Jan. 17, 2018 (D.I. 41) at 1).

III. Analysis

A. Applicable Legal Principles

1. Rule 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Federal courts, other than the United States Supreme Court, have only the subject-matter juris-diction that Congress confers upon them. "[S]ubject-matter jurisdiction cannot be waived and the issue can be raised at any time in the course of litigation." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 786 (2d Cir. 1994), citing

Fed.R.Civ.P. 12(h)(3). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court "may consider affidavits and other materials beyond the pleadings." J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); accord Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002); Makarova v. United States, supra, 201 F.3d at 113. The party asserting subject-matter jurisdiction bears the burden of proving that it exists. Hertz Corp. v. Friend, 559 U.S. 77, 96 (2010); Makarova v. United States, supra, 201 F.3d at 113; United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)

   2.  Federal Jurisdiction
       over Citizenship Claims

The federal court's jurisdiction over claims for citizenship is extremely limited. There are only two situations in which an individual may seek judicial review of a derivative citizenship claim.

A claim of derivative citizenship may be subject to judicial determination when an individual asserts citizenship as a defense in removal proceedings before an immigration judge ("IJ"). Rios-Valenzuela v. Dep't of Homeland Sec., 506 F.3d 393, 396 (5th Cir. 2007); see also Pessoa v. Holder, 10 Civ. 1387 (SHS), 2011 WL 2471206 at *3 (S.D.N.Y. Jun. 21, 2011) (Stein, D.J.). If the IJ rejects the defense and orders removal, the person may appeal the IJ's decision to the BIA within thirty days. 8 U.S.C. § 1252(b)(1); Ruiz-Martinez v. Mukasey, 516 F.3d 102, 119 (2d Cir. 2008); Pessoa v. Holder, supra, 2011 WL 2471206 at *3; Boyd v. Immigration & Customs Enforcement, 344 F. Supp. 2d 869, 872 (E.D.N.Y. 2004). If the BIA also rejects the citizenship claim, the aggrieved individual may then file a petition for review of the citizenship claim in "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. §§ 1252(b)(2), (b)(5); Esseadi v. U.S. Dep't. of Justice, 160 F. App'x 47, 48 (2d Cir. 2005); accord Rios-Valenzuela v. Dep't of Homeland Sec., supra, 509 F.3d at 396; see also Colon v. U.S. Citizenship & Immigration Servs., 14 Civ. 6150 (WHP), 2015 WL 5022632 at *2 (S.D.N.Y. Aug. 11, 2015) (Pauley, D.J.); Henriquez v. Ashcroft, 269 F. Supp. 2d 106, 108 (E.D.N.Y. 2003). If the court of appeals finds that a "genuine issue of material fact about the petitioner's nationality is

9

presented," the court will then "transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim . . . ." 8 U.S.C. § 1252(b)(5)(B); Duarte-Ceri v. Holder, 630 F.3d 83, 91 (2d Cir. 2010) (appropriate to transfer derivative citizenship matter to the district court where petitioner had properly appealed to BIA and there was a "genuine issue of fact" as to whether petitioner was under the age of eighteen when his mother was naturalized); see also Morales-Santana v. Holder, 529 F. App'x 78, 79 (2d Cir. 2013); Gordon v. Holder, 386 F. App'x 250, 251 (2d Cir. 2010).

The second avenue for judicial review arises when an individual proceeds administratively by filing an N-600 application for citizenship with USCIS. 8 C.F.R. § 341.1; see also Rios-Valenzuela v. Dep't of Homeland Sec., supra, 509 F.3d at 397; Pessoa v. Holder, supra, 2011 WL 2471206 at *3; Boyd v. Immigration & Customs Enforcement, supra, 344 F. Supp. 2d at 872. If USCIS rejects the application and the AAO affirms the denial of citizenship, the aggrieved person may then bring an action in a district court seeking a declaration of citizenship. See 8 U.S.C. § 1503(a); 8 C.F.R. § 322.5(b); see also Juste v. Sec'y U.S. Dep't of State, 697 F. App'x 130, 131 (3d Cir. 2017); Boyd

v. Immigration & Customs Enforcement, supra, 344 F. Supp. 2d at 872; Henriquez v. Ashcroft, supra, 269 F. Supp. 2d at 108.

There are, however, two major exceptions to this second path for judicial review. The jurisdictional grant to the district court to declare citizenship is barred if the dispute concerning citizenship status "(1) arose by reason of, or in connection with, any removal proceeding . . . or (2) is [an] issue in any such removal proceeding." 8 U.S.C. § 1503(a); Wilks v. Farquharson, 450 F. App'x 1, 2 (2d Cir. 2011) (no federal jurisdiction where plaintiff's citizenship status was an issue in his removal hearing); accord Martinez v. Atkinson, 678 F. App'x 218, 219 (5th Cir. 2017) (district court does not have jurisdiction where alien's claim of citizenship arose in connection with removal proceedings); see also Pessoa v. Holder, supra, 2011 WL 2471206 at *3.

B. Application of
   the Foregoing Principles

   1. Plaintiff's Derivative
      Citizenship Claims

Essentially, plaintiff is seeking to overturn Judge Sagerman's May 9, 2012 removal decision and USCIS's negative N-

11

600 finding. As defendants correctly point out, I do not have subject-matter jurisdiction to do so.

### a. Judge Sagerman's Decision

An individual claiming citizenship as a defense during removal proceedings must appeal any adverse decision by the IJ to the BIA within thirty days if he intends to seek judicial review of the decision. 8 U.S.C. §§ 1252(b)(1), (d); Ruiz-Martinez v. Mukasey, supra, 516 F.3d at 119; Grullon v. Mukasey, 509 F.3d 107, 110 (2d Cir. 2007). If this appeal is not taken, federal judicial review of the IJ's decision is barred. Ruiz-Martinez v. Mukasey, supra, 516 F.3d at 119 (requirement that plaintiff file an appeal with the BIA before the Second Circuit is "jurisdictional" in nature); Grullon v. Mukasey, supra, 509 F.3d at 110 (Court of Appeals has jurisdiction to review plaintiff's final order of removal "so long as a decision has been rendered on his application by an IJ and appealed to the BIA"); Gill v. I.N.S., 420 F.3d 82, 86 (2d Cir. 2005) (petitioners "must raise issues to the BIA in order to preserve them for judicial review"), quoting Foster v. I.N.S., 376 F.3d 75, 78 (2d Cir. 2004).

There is nothing in the record indicating that plaintiff ever appealed Judge Sagerman's decision to the BIA, and plaintiff does not claim to have done so. Thus, plaintiff has

12

not "exhausted all administrative remedies" available to him under 8 U.S.C. § 1252(d)(1) to allow for judicial review.

Furthermore, even if plaintiff had properly and timely appealed to the BIA, I would still lack subject-matter jurisdiction because any action to review the decisions of the IJ and the BIA would had to have been commenced in the United States Court of Appeals for the Second Circuit. 8 U.S.C. § 1252(b)(2) ("the petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings"). A district court does not have subject-matter jurisdiction over such a claim unless the court of appeals first finds a "genuine issue of fact" as to a citizenship assertion and expressly transfers it to the appropriate district court. Benjamin v. Bureau of Customs, 401 F. Supp. 2d 184, 185 (D. Conn. 2005) ("Under the express terms of § 1252(b)(5), a citizenship claim must first be presented to the Court of Appeals, which will transfer the petition to the district court if a factual dispute exists."); Henriquez v. Ashcroft, supra, 269 F. Supp. 2d at 108 ("[W]here an individual is subject to removal proceedings, and a claim of derivative citizenship had been denied [in the removal proceeding], that individual may seek judicial review of the claim only before the appropriate court of appeals, not a district court.").

Because plaintiff did not exhaust his administrative remedies and because the Second Circuit did not expressly transfer this matter to the district court, this court does not have subject-matter jurisdiction pursuant to 8 U.S.C. § 1252.

### b.  Plaintiff's N-600 Application

Plaintiff's attempt to bring a claim for declaratory judgment pursuant to 8 U.S.C. § 1503(a) similarly fails.  I lack subject-matter jurisdiction to declare plaintiff a citizen under that provision for two reasons.  First, plaintiff has again failed to show that he exhausted his administrative remedies before filing this declaratory judgment action.  Upon rejection of an N-600 application for citizenship by the USCIS, an individual must appeal USCIS's decision to the AAO within thirty days if he intends to seek judicial review.  "Only after a certificate of citizenship is denied following this administrative procedure does the district court have jurisdiction to determine citizenship."  Barham v. United States, 99-cv-3983, 1999 WL 1092560 at *2 (E.D.N.Y. 1999); see also Juste v. Sec'y U.S. Dep't of State, supra, 697 F. App'x at 131 (district court must dismiss a declaratory action for lack of jurisdiction where plaintiff has failed to show exhaustion of administrative remedies through USCIS and the AAO); Pessoa v. Holder, supra, 2011 WL 2471206 at *4

(subject-matter jurisdiction lacking where plaintiff provided no evidence other than conclusory assertions that he properly appealed to the AAO prior to commencing a declaratory judgment action); Henriquez v. Ashcroft, supra, 269 F. Supp. 2d at 108 (district court lacked subject-matter jurisdiction to consider the question of petitioner's derivative citizenship claim where he did not demonstrate that he had properly appealed the rejection of his citizenship application to the AAO). The USCIS rejected plaintiff's N-600 application on September 14, 2013 (N-600 Decision). Plaintiff does not allege -- and there is no evidence in the record to suggest -- that he ever appealed the USCIS's N-600 decision to the AAO.

Plaintiff's declaratory action would still be jurisdictionally barred even if he had appealed his N-600 application. Although 8 U.S.C. § 1503(a) confers jurisdiction on the district courts to adjudicate derivative citizenship claims under certain conditions, the statute carves out two clear exceptions. "[N]o such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceedings . . . or (2) is in issue in any such removal proceeding." 8 U.S.C. § 1503(a). These exceptions prevent an individual from re-litigating the issue of citizenship at the district court level if the

matter is or was in issue in a removal proceeding. Pessoa v. Holder, supra, 2011 WL 2471206 at *3 (a person may not initiate a declaratory action to establish citizenship if it is already being litigated in a removal proceeding), citing Rios-Valenzuela v. Dep't of Homeland Sec., supra, 509 F.3d at 397; accord Ortega v. Holder, 592 F.3d 738, 743 (7th Cir. 2010) ("Taken together, the exceptions set forth in subsections (a)(2) and (a)(1) are designed to protect removal proceedings from judicial interference and preserve 8 U.S.C. § 1252 as the exclusive means of challenging a final order of removal.").

Here, plaintiff's claim falls under both exceptions because (1) his claim of derivative citizenship arose in removal proceedings and (2) his main defense at those removal proceedings was that he was a citizen of the United States. Plaintiff filed his first N-600 application on March 12, 2012, well after ICE commenced removal proceedings against him on June 24, 2009 (Rej. Notice at 1; NTA). Thus, plaintiff's claim of derivative citizenship "arose by reason of, or in connection" with these removal proceedings, and the district court does not, therefore, have jurisdiction to review the claim. Sharp v. Coven, 14 Civ. 8408 (RA), 2016 WL 817468 at *2 (S.D.N.Y. Feb. 19, 2016) (Abrams, D.J.) (an applicant for derivative citizenship who filed an N-600 application "only after removal proceedings were initiated

against him" is ineligible for relief under 8 U.S.C. § 1503(a)),
citing Colon v. U.S. Citizenship & Immigration Servs., supra,
2015 WL 5022632 at *2. Moreover, throughout his removal proceed-
ings, plaintiff has asserted the defense that he was a United
States citizen, clearly putting his status "at issue" in the
proceedings. Headley-Ombler v. Holder, 985 F. Supp. 2d 379, 387-
388 (E.D.N.Y. 2013) ("an alien who raises the issue of citizen-
ship during removal proceedings, whether those proceedings are
pending or terminated, is barred from later bringing a Section
1503(a) declaratory judgment action"); see also Wilks v.
Farquharson, supra, 450 F. App'x at 2; Pessoa v. Holder, supra,
2011 WL 2471206 at *3.

Accordingly, this court also lacks subject-matter
jurisdiction pursuant to 8 U.S.C. § 1503(a).

      2.   Request to Stay Judge
          Sagerman's Removal Order

Finally, plaintiff's application for a stay of Judge
Sagerman's May 9, 2012 removal order fails for lack of jurisdic-
tion. The REAL ID Act of 2005 deprives district courts of
subject-matter jurisdiction to review final orders of removal. 8
U.S.C. § 1252(a)(5); see also Singh v. U.S. Citizenship & Immi-
gration Servs., 878 F.3d 441, 445 (2d Cir. 2018); Delgado v.

Quarantillo, 643 F.3d 52, 54 (2d Cir. 2011). It follows then
that district courts also lack the power to stay such orders.
Sienkiewicz v. Lynch, 15-cv-1871 (VAB), 2016 WL 901567 at *1 (D.
Conn. Mar. 9, 2016) (REAL ID Act "strips this Court of its
jurisdiction to stay an alien's removal"); Lage v. Chapdelaine,
10-cv-1030 (JCH), 2010 WL 4688820 at *4 (D. Conn. Nov. 10, 2010)
("The REAL ID Act of 2005 not only strips district courts of the
power to review final orders of removal, but it also precludes
district courts from staying orders of deportation and
removal."); Al-Garidi v. Holder, 09-cv-6160, 2009 WL 1439216 at
*1 (W.D.N.Y. May 15, 2009) ("This Court and other district courts
throughout this country have routinely held that because district
courts have no jurisdiction to review final orders of removal,
they have no jurisdiction to review requests for stays of re-
moval."); Almanzar v. Newland, 08 Civ. 8612 (NRB), 2009 WL
3097203 at *1 (S.D.N.Y. Sept. 28, 2009) (Buchwald, D.J.) (dis-
trict court "has no power to prevent DHS from deporting" plain-
tiff because it lacks jurisdiction to do so). Therefore, plain-
tiff's request for a stay of removal must be denied.

### 3. Plaintiff's APA Claim

Although not addressed by defendants in their motion to
dismiss, plaintiff's APA claim that his denial of derivative

18

citizenship by the immigration court and USCIS was arbitrary and capricious must also be dismissed pursuant to the REAL ID Act of 2005. 8 U.S.C. § 1252(a)(5). The Second Circuit has interpreted this statute to divest district courts of subject-matter jurisdiction to hear claims that both directly and indirectly challenge an order of removal. Singh v. U.S. Citizenship & Immigration Servs., supra, 878 F.3d at 445 ("the term judicial review of an order of removal, as used in Section 1252(a)(5), encompasses both direct and indirect challenges to removal orders" (internal quotation marks and citations omitted)); Delgado v. Quarantillo, supra, 643 F.3d at 55 (jurisdictional bar imposed by section 1252(a)(5) applies equally to preclude indirect challenges to an order of removal). The Court of Appeals in Singh v. U.S. Citizenship & Immigration Servs., supra, 878 F.3d at 446, explained this interpretation by noting that "Congress's intent in enacting the REAL ID Act . . . was to streamline judicial scrutiny of removal orders by consolidating those proceedings in one forum and to eliminate the possibility of piecemeal challenges." See also Xiao Ji Chen v. U.S. Dep't of Justice, 434 F.3d 144, 151 n.3 (2d Cir. 2006) ("a primary effect of the REAL ID Act is to limit all aliens to one bite at the apple").

Courts have held the bar against "indirect challenges" to orders of removal prohibits APA claims similar to the one

19

brought by plaintiff. Singh v. U.S. Citizenship & Immigration Servs., supra, 878 F.3d at 445; Delgado v. Quarantillo, supra, 643 F.3d at 55. Because "the APA does not empower courts to set aside agency actions where other statues preclude judicial review," the REAL ID Act "precludes judicial review of challenges to removal orders brought under the APA." Singh v. U.S. Citizenship & Immigration Servs., supra, 878 F.3d at 445, quoting 5 U.S.C. § 701(a)(1); Delgado v. Quarantillo, supra, 643 F.3d at 55 (plaintiff cannot circumvent the jurisdictional bar by bringing a challenge to removal under the APA and claiming a district court has federal question jurisdiction); accord Lee v. U.S. Citizenship & Immigation Servs., 592 F.3d 612, 620 (4th Cir. 2010) (claim raised under the APA falls squarely within the jurisdiction restrictions laid out in the REAL ID Act); Lang v. Napolitano, 596 F.3d 426, 429 (8th Cir. 2010) (finding an "obvious lack of district court jurisdiction over a claim for injunctive and mandamus relief that would prohibit the agency from executing removal order").

Thus, plaintiff's APA claim that the denial of his citizenship was arbitrary and capricious is dismissed pursuant to 8 U.S.C. § 1252(a)(5).

4.  Writ of Mandamus as to
    Plaintiff's N-600 application

Finally, plaintiff requests a Writ of Mandamus to
compel USCIS to adjudicate his N-600 application.  As the record
indicates that USCIS rendered a decision on this application on
September 14, 2013 (N-600 Decision), this claim is dismissed as
moot.

IV.  Conclusion

Accordingly, for all the foregoing reasons, defendants'
motion to dismiss is granted, and plaintiff's claim is dismissed
in its entirety for lack of subject-matter jurisdiction.

Dated:  New York, New York
        March 8, 2018

                                SO ORDERED

                                _____
                                HENRY PITMAN
                                United States Magistrate Judge

Copies transmitted to:

All Counsel of Record